UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Thomas Massey,
    Petitioner,

vs.                           Case No. 1:08cv514
                                   (Barrett, J.; Black, M.J.)

Warden, London Correctional
Institution,
    Respondent.

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the London Correctional Institution in London, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is now before the Court on the petition (Doc. 1), respondent's return of writ with exhibits (Doc. 15), and petitioner's "traverse" in reply to the return of writ (Doc. 16).

### Background

On June 30, 2006, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of illegal assembly or possession of chemicals for manufacture of drugs in violation of Ohio Rev. Code § 2925.041 and one count of possessing criminal tools in violation of Ohio Rev. Code § 2923.24(A). (Doc. 15, Ex. 2).

Petitioner filed a pretrial motion to suppress his statements to law enforcement agents, as well as evidence seized from his home "and other areas where he had a reasonable expectation of privacy." (*Id.,* Ex. 4). The motion was denied on November 13, 2006, after a hearing held on November 8, 2006. (*See id.,* Ex. 5 & Suppression Hearing Tr.).

Following a jury trial, petitioner was found guilty as charged. (*Id.,* Ex. 6). On January 21, 2007, he was sentenced to concurrent prison terms of three years, "of which two (2) years are mandatory," for the illegal assembly/possession of chemicals offense, and six months for the possession of criminal tools offense. (*Id.,* Ex. 7).

With the assistance of counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, raising five assignments of error:

> 1. The trial court erred when it failed to grant appellant's motion to suppress evidence obtained by police in a warrantless search of a shed, where the search was conducted pursuant to an invalid consent given by the owner of the shed.
>
> 2. The trial court erred when it failed to grant appellant's motion to suppress his statements made to law enforcement after invoking his *Miranda* rights.
>
> 3. The trial court erred in overruling appellant's motion for judgment of acquittal pursuant to Crim. R. 29.
>
> 4. The judgment of conviction is contrary to law and to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in that there was insufficient evidence adduced to establish each and every element of the offenses charged beyond a reasonable doubt.
>
> 5. The judgment of the trial court is contrary to the manifest weight of the evidence.

(*Id.,* Ex. 9).

On January 23, 2008, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the trial court's judgment. (*Id.,* Ex. 11). In its decision, the state appellate court provided the following summary of the facts,

which is presumed correct under 28 U.S.C. § 2254(e)(1),[1] regarding the incident that resulted in petitioner's conviction and sentence:

> On June 21, 2006, Hamilton County sheriff's deputies were called to the home of defendant-appellant Thomas Massey for a domestic dispute. When the deputies arrived, Massey was inside the home. Deputy Kevin Singleton found Massey in a bedroom. No firearms were found. Massey consented to a search of the home, which yielded marijuana and drug paraphernalia. Because Massey had an outstanding warrant in another jurisdiction, he was taken into custody, read his *Miranda* rights, and placed in the back of a police cruiser.
>
> The deputies learned that Massey was storing chemicals for the manufacture of methamphetamine in a neighbor's shed. Deputy Adam Kroger spoke to Dawn Harris, the owner of the neighboring property and shed. Harris also signed an affidavit that stated that she had not given anyone permission to enter the shed, that she had not been in the shed in a number of years, and that she had no knowledge of its contents.
>
> A search of the shed revealed three tanks of anhydrous ammonia, a chemical commonly used to manufacture methamphetamine. Near the tanks was a crescent wrench opened to the exact setting on one of the tanks.
>
> RENU agent Aaron Jones told Massey that he was going to search the house for any evidence of the manufacture of methamphetamine. Massey, who had invoked the right to an attorney, called Jones back and stated that he wanted to talk. Jones reminded Massey that he had asked for a lawyer and told Massey that he could not speak to him because of that request. Massey insisted on talking. He told Jones

---

[1] Specifically, 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, he has not shown that such findings are erroneous.

that he had provided the anhydrous ammonia to others who manufactured methamphetamine. A search of Massey's home revealed coffee filters containing methamphetamine residue. A key to the shed was also found.

(*Id.,* Ex. 11, pp. 1-2).

Petitioner timely filed a *pro se* notice of appeal to the Supreme Court of Ohio. (*Id.,* Ex. 12). In his memorandum in support of jurisdiction, he asserted the same claims of errors that he had raised to the Ohio Court of Appeals. (*See id.,* Ex. 13). On July 8, 2008, the Supreme Court of Ohio denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 14).

Petitioner next initiated the instant habeas corpus action. In his *pro se* petition, filed on August 5, 2008, petitioner essentially asserts three grounds for relief:

> **Ground One**: The Trial Court Erred When It Failed To Grant Petitioner's Motion To Suppress Evidence Obtained By Police In A Warrantless Search Of A Shed, Where The Search Was Conducted Pursuant To An Invalid Consent Given By The Owner Of The Shed.
>
> **Ground Two**: The Trial Court Erred When It Failed To Grant Petitioner's Motion To Suppress His Statements Made To Law Enforcement After Invoking His *Miranda* Rights.
>
> **Ground Three**: The Trial Court Erred In overruling Petitioner's Motion For Judgment Of Acquittal Pursuant To Criminal Rule 29[;] The Judgment Of Conviction Is Contrary To Law And To The Due Process Clause Of The Fourteenth Amendment ..., In That There Was Insufficient Evidence Aduced To Establish Each And Every Element Of The Offenses Charged Beyond A Reasonable Doubt[; and] The Judgment Of The Trial Court Is Contrary To The Manifest Weight Of The Evidence.

(Doc. 1, pp. 4, 6, 7).[2]

## OPINION

### A Petitioner's Fourth Amendment Claim Alleged In Ground One Is Not Subject To Review In This Federal Habeas Proceeding

In Ground One of the petition, petitioner alleges that his Fourth Amendment rights were violated when evidence obtained from a warrantless search of a shed located on a neighbor's property was introduced against him at trial. (Doc. 1, pp. 4-6). Specifically, petitioner contends that the owner of the property, Dawn Harris, who had consented to the search of the shed, lacked authority to do so because she "did not have the key [to the shed] and had not entered the shed in years." (*Id.,* p. 5).

In response, respondent contends in the return of writ that the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465, 494-95 (1976), precludes federal habeas review of this ground for relief. (Doc. 15, Brief, pp. 5-7). As respondent has argued, federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone*, 428 U.S. at 494-95.

To determine whether the petitioner's claim is subject to review, a federal habeas corpus court must make two distinct inquiries: (1) whether the State has provided a procedural mechanism through which, in the abstract, petitioner could raise a Fourth Amendment claim; and (2) whether petitioner's presentation of the claim was in fact frustrated because of a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir.), *cert. denied*, 459 U.S. 948 (1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000), *cert. denied,* 531 U.S. 1089 (2001).

Ohio provides an adequate procedural mechanism for the litigation of Fourth

---

[2] In his habeas petition, petitioner "consolidated and argued together" the three claims of error challenging the sufficiency and weight of the evidence that he had raised on direct review in the Ohio courts. (*See* Doc. 1, p. 7). Therefore, although petitioner also has alleged these claims separately in the instant petition as Grounds Three, Four and Five, the undersigned will address the claims as one consolidated ground for relief.

5

Amendment claims in the form of a pretrial motion to suppress pursuant to Ohio R. Crim. P. 12, and a direct appeal as of right from an order denying a motion to suppress pursuant to Ohio R. App. P. 3 and 5. Discretionary review by the Supreme Court of Ohio is not an additional requirement for ensuring full and fair litigation of a Fourth Amendment claim in Ohio. Therefore, under the first inquiry, Ohio's mechanism for the resolution of Fourth Amendment claims, in the abstract, presents the opportunity to raise such claims. *Id.*

Under the second inquiry, petitioner has not shown that there was a failure of the State's procedural mechanism which frustrated the presentation of his Fourth Amendment claim in the Ohio courts. Indeed, petitioner utilized Ohio's mechanism, by raising his Fourth Amendment claim to the trial court in a suppression motion. (*See* Doc. 15, Ex. 4 & Suppression Hearing Tr.). He also challenged the trial court's denial of the motion to suppress on direct appeal to the Ohio Court of Appeals and on further appeal to the Supreme Court of Ohio. (*See id.,* Exs. 9, 13).

Before ruling on petitioner's suppression motion, the trial court held a hearing on November 8, 2006, where evidence and arguments were presented on the motion. Specifically, at the hearing, defense counsel was provided the opportunity to cross-examine the State witnesses and to argue petitioner's position. (*Id.*, Suppression Hearing Tr.). Moreover, petitioner availed himself of the opportunity to obtain further review of his Fourth Amendment claim by challenging the denial of his suppression motion on direct appeal.

In this case, the record reflects that the Fourth Amendment claim was carefully considered by the trial court, which found after "hear[ing] the testimony of the witnesses and view[ing] the exhibits, [as well as] the argument of law by counsel, ... that there was expressed and apparent authority given by the owner of the property ... to search" and that "the consent to search was valid." (*See id.*, Suppression Hearing Tr. 110). The Ohio Court of Appeals also addressed the claim on the merits, and concluded that the evidence presented at the suppression hearing established that "the deputies had a reasonable belief that [the property owner] had authority over the premises and the ability to permit access to the shed." (*Id.,* Ex. 11, pp. 2-3). Finally, petitioner even asserted the claim on further appeal to the Supreme Court of Ohio, but that court denied leave to appeal and dismissed the appeal, presumably because it was not persuaded by petitioner's memorandum in support of jurisdiction that the claim merited further consideration. (*See id.,* Exs. 13-14).

Accordingly, in sum, the undersigned concludes that the Fourth Amendment

claim alleged in Ground One of the petition is barred from review under the Supreme Court's *Stone* decision. Federal habeas review of the claim is prohibited because petitioner had a full and fair opportunity to litigate it in the state courts, and presentation of the claim was not thwarted by any failure of the State's corrective process. *Cf. Stone*, 428 U.S. at 494-95.

**B. Petitioner Is Not Entitled To Relief Based On His Fifth Amendment Claim Alleged In Ground Two Challenging The Denial Of His Motion To Suppress His Statements To Law Enforcement Agents**

In Ground Two of the petition, petitioner alleges that the trial court erred in denying his motion to suppress his statements to law enforcement agents after he was taken into police custody, was advised of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436 (1966), and had invoked his right to counsel. (Doc. 1, pp. 6-7). This claim of constitutional error under the Fifth Amendment, which was raised by petitioner on appeal to both the Ohio Court of Appeals and Supreme Court of Oho, is subject to review on the merits.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Constit. amend. V. This provision, which applies to the States through the Fourteenth Amendment, *Malloy v. Hogan,* 378 U.S. 1, 8 (1964), prohibits the government from using any statement against a criminal defendant "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda,* 384 U.S. at 444.

In *Miranda,* the Supreme Court held:

[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning ... [h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 478-79. In *Miranda,* the Supreme Court also set forth the procedures to be followed for custodial interrogation after the requisite warnings are given,

7

specifically: "If the accused indicates that he wishes to remain silent, 'the interrogation must cease.' If he requests counsel, 'the interrogation must cease until an attorney is present.'" *Edwards v. Arizona,* 451 U.S. 477, 482 (1981) (quoting *Miranda,* 384 U.S. at 474).

"*Miranda* thus declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." *Id.* When a person in custody invokes that right or otherwise "'expresse[s] his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him,' unless he validly waives his earlier request for counsel." *Smith v. Illinois,* 469 U.S. 91, 94-95 (1984) (quoting *Edwards,* 451 U.S. at 484-85).

In *Edwards,* the Supreme Court emphasized that if the accused "initiates further communication, exchanges, or conversations with the police" after invoking his right to counsel, "nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial." *Edwards,* 451 U.S. at 484-85. On the other hand, the Court also noted that "frequently ... in the course of a meeting initiated by the accused, the conversation is not wholly one-sided," but also involves the officers "say[ing] or do[ing] something that clearly [constitutes] 'interrogation.'" *Id.* at 486 n.9. In such cases, the question whether a valid waiver has occurred turns on "whether the purported waiver was knowing and intelligent ... under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Id.*

In a subsequent plurality decision, the Supreme Court clarified that in cases where "reinterrogation follows" in a conversation initiated by the accused, it still must be shown "that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Oregon v. Bradshaw,* 462 U.S. 1039, 1044 (1983). As noted in the dissenting opinion in *Bradshaw,* 462 at 1054 n.2, the rule agreed to by eight of the justices in that case is "simply stated: unless the accused himself initiates further communication with the police, a valid waiver of the right to counsel cannot be established[;] [i]f an accused has himself initiated further communication with the police, it is still necessary to establish as a

8

separate matter the existence of a knowing and intelligent waiver[.]"[3]

In this case, the following evidence was presented at the suppression hearing on the Fifth Amendment issue. Hamilton County deputy sheriff Kevin Singleton testified that he placed petitioner in custody in the back of his cruiser after learning that there was an outstanding warrant for petitioner's arrest from another jurisdiction "for chemicals to manufacture meth." (Doc. 15, Suppression Hearing Tr. 15, 20-21). Singleton stated that no questions were asked of petitioner until after three tanks, later determined to contain anhydrous ammonia, were found in the neighbor's shed and petitioner was read and stated that he understood his *Miranda* rights. (*Id.*, Tr. 20, 24, 40). When asked by Singleton "if he had any knowledge or any property contents inside this shed," petitioner responded that he "had some stuff inside the shed" and "immediately went into his knowledge of the three tanks," which he claimed contained "freon" and "weren't for the manufacturing of methamphetamine." (*Id.*, Tr. 24-25, 40-41).

Petitioner did not "relay anything else" to Singleton. (*Id.*, Tr. 25). Singleton testified that petitioner "stopped answering my questions" and "said something about talking to his lawyer." (*Id.*, Tr. 25, 41). At that point, Singleton discontinued the interview and "questioning ceased." (*Id.*).

Aaron Jones, a RENU agent for the Cincinnati Police Department, testified that he and another agent were called to the scene to investigate the shed with the three tanks believed to contain anhydrous ammonia. (*Id.*, Tr. 46-47). By that time, petitioner had been placed in custody and was seated in Singleton's police cruiser. (*Id.*, Tr. 47, 67).

Jones testified that based on their observations of the tanks and other items found in the shed, he and the other agent believed that petitioner "possessed anhydrous ammonia" and was "either off-sourcing from these tanks, taking it to another location to cook meth, or was supplying individuals with anhydrous

---

[3] *See also Smith,* 469 U.S. at 95 ("if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked"); *Van Hook v. Anderson,* 488 F.3d 411, 424 (6th Cir.) ("While a suspect's initiation might lead to a valid waiver of the right to counsel, it is not itself sufficient. Before the police can actually begin to interrogate a suspect after he has initiated, they must ensure that the suspect is knowingly and intelligently waiving the right to counsel under the totality of the circumstances."), *cert. denied,* 128 S.Ct. 614 (2007).

ammonia, whether it be himself or someone else to cook somewhere." (*Id.,* Tr. 48, 57-58). Jones stated that because he "didn't see anything in the shed," he believed that methamphetamine was being manufactured in the "house that he was residing in, or possibly some vehicles that were outside." (*Id.,* Tr. 58).

Jones testified that after making these observations, he approached petitioner, who was still sitting in the back of the police cruiser, and spoke with petitioner through the open window of the vehicle. (*Id.*, Tr. 67-68). Jones stated that petitioner "spoke first, saying that he was worried about his girlfriend in the house who had just underwent chemotherapy." (*Id.,* Tr. 68-69). Jones testified as follows about the nature of the conversation that ensued:

> ....I had been advised by Deputy Singleton that Mr. Massey had invoked his right to speak with a lawyer prior to any questions.
>
> I spoke with Mr. Massey and I told him I was aware of this, and that I was going into his residence to conduct a search for any type of meth manufacture, any other chemicals, any other dangers. Basically to make sure there's no danger to the public, either the lady in the house or anybody else.
>
> As I was walking away from the vehicle he responded to me to come back. He said, come here. Come here.
>
> As I spoke with him he began to tell me things. I told him, look, you've already asked for a lawyer. I'm not going to ask you any questions. You know, it's not right for me to ask you any questions.
>
> At that point he repeatedly said, I want to talk with you without a lawyer. I want to talk to you. I want to tell the truth.

(*Id.,* Tr. 58-59). At that point, petitioner proceeded to make the challenged statements to Jones, saying that the "tanks were anhydrous tanks, [which] he had not touched ... for many years;" that the tanks were "used in a refrigeration business that he owned;" that he "used to be addicted to methamphetamine" and "was currently trying to get off methamphetamine;" and that he "supplied chemicals to make methamphetamine, but ... did not make them himself." (*Id.,* Tr. 59-60).

At the close of the hearing, after hearing the witnesses' testimony and counsels' arguments, the trial court found that petitioner's statements to the law enforcement agents were admissible because petitioner had "volunteered" the remarks and "there was no coerc[ion] or restarting of the investigation or conversation with the remarks by the officer." (Doc. 15, Suppression Hearing Tr. 110-11). On appeal, the Ohio Court of Appeals was the only state appellate court to address the merits of petitioner's claim challenging the trial court's ruling. The court summarily overruled the assignment of error, reasoning as follows:

> The record shows that Massey volunteered the statement even after he had been reminded that he had invoked his right to counsel. Massey repeatedly stated that he wanted to talk to the RENU agent without a lawyer and that he wanted to "tell the truth."

(*Id.,* Ex. 11, p. 3).

In the usual case, a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

Moreover, absent "clear and convincing evidence" to the contrary, the state courts' factual findings must be presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Van Hook v. Anderson,* 488 F.3d 411, 425 (6th Cir.) (holding that although the prosecution had the burden of proving at the suppression hearing that the accused initiated a conversation with the police after invoking his right to counsel, "we presume on habeas review that the factual findings of the state courts are correct" even "when two different 'conclusions find fair support in the record'"), *cert. denied,* 128 S.Ct. 614 (2007).

Here, it is clear from the record that no Fifth Amendment concerns were

implicated by the admission of petitioner's statements to Deputy Singleton, which were volunteered by petitioner after he was read and stated he understood his *Miranda* rights and before he invoked his right to counsel. Moreover, the state courts' determination that petitioner's subsequent remarks to RENU agent Jones were admissible because petitioner essentially waived his earlier request for counsel and "volunteered" the statements is based on a reasonable determination of the facts in light of the evidence presented in the state trial proceedings, and neither is contrary to nor involves an unreasonable application of clearly established federal law as determined by the Supreme Court in *Miranda* and *Edwards* and their progeny.

Specifically, the evidence presented at the suppression hearing supports the finding that petitioner initiated the conversation with Jones to express his concerns about his girlfriend, who had recently undergone chemotherapy and was still in the home. Jones responded by stating only that he was going into the residence "to make sure there's no danger to the public, [to] either the lady in the house or anybody else." To the extent this remark could be construed as a re-commencement of "interrogation," which is questionable, Jones immediately reminded petitioner that he could not ask any questions of petitioner because petitioner had "already asked for a lawyer." The state courts could reasonably conclude from the totality of the circumstances that petitioner knowingly, voluntarily and intelligently waived his previously-invoked right to counsel at that point by asserting in reply that he wanted to continue talking to Jones even without a lawyer present in order "to tell the truth" and proceeded to volunteer the challenged statements that were introduced against him at trial.

Petitioner has argued in his "traverse" in reply to the return of writ that he is entitled to relief because respondent "has not offered any proof to demonstrate that Petitioner made a valid waiver of his ... right [to counsel] by signing any type of legal document." (Doc. 16, p. 9). However, the Supreme Court has made it clear that although an "express written or oral statement of waiver of ... the right to counsel is usually strong proof of the validity of that waiver, [it] is not inevitably necessary or sufficient to establish waiver." *North Carolina v. Butler,* 441 U.S. 369, 373 (1979). The Court continued:

> The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the

12

> *Miranda* case. As was unequivocally said in *Miranda*, mere silence is
> not enough. That does not mean that the defendant's silence, coupled
> with an understanding of his rights and a course of conduct indicating
> waiver, may never support a conclusion that a defendant has waived
> his rights. The courts must presume that a defendant did not waive his
> rights; the prosecution's burden is great; but in at least some cases
> waiver can be clearly inferred from the actions and words of the
> person interrogated.

*Id.* In the instant case, waiver could be clearly inferred from petitioner's actions and words.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to relief based on the claim alleged in Ground Two of the petition, because the state courts could reasonably determine that petitioner's statements to both Deputy Singleton and RENU agent Jones were admissible under the Fifth and Fourteenth Amendments. It appears from the record that petitioner's statements to Deputy Singleton, which were made after petitioner was read his *Miranda* rights and before he asserted a request for counsel, do not trigger any Fifth Amendment concerns. Moreover, the record supports the state courts' determination that petitioner knowingly and voluntarily waived his right to counsel when he initiated a conversation with RENU agent Jones and expressed his desire to "tell the truth" to Jones even after Jones reminded petitioner of his earlier request for counsel which precluded any further questioning by the police.

## C. Petitioner Is Not Entitled To Relief Based On The Consolidated Claims In Ground Three Challenging The Weight And Sufficiency Of Evidence

In Ground Three of the petition, petitioner asserts three consolidated claims challenging his convictions on the basis of the evidence that was introduced by the State at trial to establish his guilt. He essentially contends in these three claims that he is entitled to habeas relief because (1) as a matter of state law, the verdicts of guilt were against the manifest weight of the evidence; and (2) as a matter of due process, the evidence was insufficient to support his convictions. (*See* Doc. 1, pp. 7-10). These claims, which were raised by petitioner on direct appeal to the Ohio Court of Appeals and Supreme Court of Ohio, are not subject to any procedural bar to review. (*See* Doc. 15, Exs. 9, 13).

However, as an initial matter, the Court lacks jurisdiction to consider petitioner's state-law manifest-weight-of-the-evidence claim. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.), *cert. denied,* 540 U.S. 930 (2003). Because petitioner's manifest-weight-of-the-evidence claim raises an issue of state-law only, it is not cognizable in this federal habeas proceeding. *See Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982); *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997).[4]

Only petitioner's sufficiency of evidence claim triggers a due process issue subject to review on the merits herein. The Ohio Court of Appeals, which was the only state court to issue a decision addressing the claim's merits, summarily overruled petitioner's assignment of error, stating only that "[a]fter viewing the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have found that all the essential elements of the offenses had been proved beyond a reasonable doubt." (*Id.,* Ex. 11, p. 3).

The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). In determining whether or not the evidence presented at trial was sufficient to satisfy this due process standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, under this standard, the reviewing court "faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that

---

[4] It is noted that *Thompkins* was superseded on other grounds by state constitutional amendment allowing for state supreme court review of manifest-weight-of-the-evidence claims in death penalty cases. *See State v. Smith,* 684 N.E.2d 668, 683-84 & n.4 (Ohio 1997), *cert. denied,* 523 U.S. 1125 (1998).

14

the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983).

It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the trier of fact which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)). Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Id.* at 796-97 (and Sixth Circuit cases cited therein); *see also United States v. Slewa,* No. 06-20519, 2008 WL 5244353, at *6 (E.D. Mich. Dec. 16, 2008) (unpublished).

Here, petitioner was convicted of illegal assembly or possession of chemicals for manufacture of drugs under Ohio Rev. Code § 2925.041, which provides: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II of section 2925.04 of the Revised Code." Petitioner also was convicted of possession of criminal tools under Ohio Rev. Code § 2923.24(A), which provides: "No person shall possess or have under the person's control any substance, device, instrument, or article, with the purpose to use it criminally." The undersigned concludes that sufficient evidence was presented at trial to support both of these convictions.[5]

---

[5] Petitioner argues in the petition and his "traverse" brief that he could not be found to violate both criminal statutes, because they contain "conflicting" provisions. (*See* Doc. 1, pp. 8-9; Doc. 16, p. 11). As respondent has pointed out in the return of writ (*see* Doc. 15, pp. 18-19), this argument does not pertain to petitioner's sufficiency-of-evidence claim and raises a question of state-law only involving the "Ohio courts' interpretation of Ohio law," which "is not a proper subject for habeas relief." *See* 28 U.S.C. § 2254(a); *Pulley,* 465 U.S. at 41; *see also Estelle,* 502

Specifically, the following evidence was introduced to establish petitioner's guilt on the two charges. Deputy Singleton, who responded to the scene and arrested petitioner on the night in question, testified that three 150-pound tanks of anhydrous ammonia were discovered in a shed located on the property of petitioner's neighbor, Dawn Harris. (Doc. 15, Trial Tr. 262-63). RENU agent Jones testified that anhydrous ammonia, which is "readily available" in Ohio and Indiana as a "commercial fertilizer," is commonly used in the Midwest to manufacture methamphetamine, a Schedule II controlled substance. (*Id.,* Trial Tr. 294, 296-98).

Dawn Harris testified that she had given petitioner authority to store items in the shed, as well as permission to put a lock on the shed; she herself did not have a key to that lock and had not been inside the shed in over four years. (*Id.,* Trial Tr. 248). Petitioner admitted to both Singleton and Jones that he was the owner of the tanks found in the shed. He initially stated to Singleton that the tanks contained freon; later remarked to Jones that the tanks were used in his "prior [refrigerant] business" and had not been "touched ... in ... years;" and finally admitted to Jones that although he himself "did not make methamphetamine," he "supplied chemicals to people who made methamphetamine." (*Id.,* Trial Tr. 265, 272-73, 310-11, 331-32). Petitioner's fiancee, Patricia Willoughby, who was called as a defense witness, further testified that she knew about the tanks in the shed because she and petitioner had "put them there;" she stated that the tanks contained freon and were used by petitioner in his business for the refrigeration of tractor-trailers. (*Id.,* Trial Tr. 371, 373-74).

RENU agent Jones, who responded to the scene to investigate the shed and surrounding area, testified that the tanks were labeled as containing anhydrous ammonia and also tested "positive" for anhydrous ammonia. (*Id.,* Trial Tr. 299, 303-05). Jones observed a device attached to one of the tanks, which consisted of a rubber hose and a "makeshift connection" at the end of the hose to dispense or "allow some control of the release of anhydrous ammonia" from the tank. (*Id.,* Trial Tr. 306). Jones stated that the metal fitting at the end of the hose was "bluish teal" in color, which indicated that "this hose and this fitting have been used to dispense anhydrous ammonia." (*Id.,* Trial Tr. 307). It appeared to Jones that anhydrous ammonia had recently been "off sourced into another container"

---

U.S. at 67-68.

because a "crescent wrench" was found on the ground near the tank, which was set "exactly to the setting on the top of the tank." (*Id.,* Trial Tr. 307-08).

Although Jones did not find an "active meth lab" in the shed, petitioner's home or any of the other locations in the area that were searched, he testified that it was his belief "then and now" that petitioner was "outsourcing this anhydrous ammonia" because of the unprofessional manner in which the tanks were maintained; Jones explained:

> ....To me it looks like a makeshift operation to dispense anhydrous ammonia. And because of the teal color, the fittings and the hoses, makeshift hoses, it's just not proper equipment to properly distribute anhydrous ammonia or to use it at all, so in my belief this is an illegal operation, that obviously has been sourced at one point because all the fittings showed that anhydrous – there is no cobwebs, nothing blocking the entrance to the door.... These weren't tanks that were sitting around docile for years.

(*Id.,* Trial Tr. 308-09, 323-24).

On searching petitioner's home, Jones found a set of keys belonging to petitioner on the dresser in the master bedroom; one of the keys on the ring fit the lock to the shed. (*Id.,* Trial Tr. 314). Jones also found coffee filters on the top shelf of the master bedroom closet, which the parties stipulated contained residue from methamphetamine. (*Id.,* Trial Tr. 312-14, 399). Jones's supervisor, RENU agent Gregory Morgan, testified that coffee filters are used in the manufacture of methamphetamine "to separate the liquid that may be still inside your finished product." (*Id.*, Trial Tr. 349, 355).

Morgan further testified that a person "licensed in refrigeration ... would not be allowed to possess anhydrous ammonia." (*Id.,* Trial Tr. 363). Although Morgan conceded that anhydrous ammonia is used as a refrigerant in large manufacturing industries subject to EPA regulation, "[a]n individual cannot possess that amount of anhydrous ammonia," which can be "flammable and explosive" and also is classified as highly corrosive, in light of OSHA's "very large restrictions on protocol for emergency evacuations and response and notifications." (*Id.,* Trial Tr. 363-65).

17

After the defense introduced an exhibit during Patricia Willoughby's examination showing that petitioner had "successfully completed" a "Refrigerant Recovering Recycling Review and Certification Program" in 1993, Morgan was recalled by the prosecutor as a rebuttal witness. (*See id.*, Trial Tr. 375, 395). Morgan testified that "the person who bears this certificate is only able to work on mobile units such as air conditioners in your car," which use only certain specified refrigerants, and "not anhydrous ammonia." (*Id.,* Trial Tr. 395-96).

Viewing all this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that in violation of Ohio Rev. Code § 2925.041, petitioner knowingly assembled or possessed a chemical (anhydrous ammonia), which is used to manufacture a Schedule II controlled substance (methamphetamine), with the intent to manufacture that controlled substance. In addition, a rational juror could have found petitioner guilty beyond a reasonable doubt of the charged possession of criminal tools offense under Ohio Rev. Code § 2923.24(A), because it reasonably could be inferred from the evidence that petitioner possessed or had under his control the three tanks of anhydrous ammonia, as well as the coffee filters containing residue from methamphetamine found on the top shelf of the master bedroom closet, for the purpose of using them criminally to manufacture methamphetamine.

Petitioner has contended that insufficient evidence was presented to establish that he possessed the coffee filters found in the master bedroom closet, particularly given the testimony of Patricia Willoughby's daughter, Stacy Goldheiser, who averred that the coffee filters belonged to her and that she had placed them in the master bedroom closet to keep them away from her children. (*See id.,* Trial Tr. 586, 589). Petitioner also argues that the State's "entire case was based on the credibility of the RENU agent," Aaron Jones. However, it was the jury's responsibility to resolve the conflicts in testimony and to assess the credibility and weight to be accorded the various witnesses' testimony. *See Jackson,* 443 U.S. at 319. In any event, even assuming, *arguendo,* that the State's evidence regarding the coffee filters was too tenuous to establish that the coffee filters were under the control of petitioner as opposed to another resident of the house, a rational juror could still have found petitioner guilty of the two charged offenses based on the evidence, which included petitioner's own admissions, establishing his ownership of the three tanks of anhydrous ammonia found in the shed and criminal intent.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled

to relief based on the consolidated claims alleged in Ground Three challenging his convictions on the grounds that the jury's verdicts of guilt were against the manifest weight of the evidence and were not supported by sufficient evidence. Petitioner's state-law manifest-weight-of-the-evidence claim is not cognizable in this federal habeas proceeding, and sufficient evidence was introduced at trial to support the reasonable inference that petitioner was guilty of the charged offenses.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the Fourth Amendment claim alleged in Ground One of the petition, which is not cognizable under *Stone v. Powell,* 428 U.S. 465, 494-95 (1976). A certificate of appealability also should not issue with respect to petitioner's remaining grounds for relief, which were addressed on the merits herein, because petitioner has not shown that reasonable jurists could debate whether such claims should have been resolved in a different manner or that the issues presented are "adequate to deserve encouragement to proceed further." *See Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000), in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis* at the close of this case, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  11/10/09                    s/Timothy S. Black
    cbc                                    Timothy S. Black
                                                        United States Magistrate Judge

J:\BRYANCC\2009 habeas orders\08-514denypet.4thA.miranda-edwards.sufficevid-illegassemby-crimtool-drugs.wpd

# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Thomas Massey,
    Petitioner,

vs.

Warden, London Correctional
Institution,
    Respondent.

Case No. 1:08cv514
(Barrett, J.; Black, M.J.)

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation **within ten days** after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed **within ten days** after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).